PROPRIETORS OF THE CITY HOTEL IN WORCESTER *vs.* WILLIAM DICKINSON.

A written agreement, signed and delivered to a corporation subject to Rev. Sts. *cc.* 38, 44 by which the subscribers severally promise " to pay into the funds of the said company in such instalments as the president and directors may under the provisions of law require," a certain sum for each share subscribed for, is a promise to the corporation; and will support an action by the corporation for the amount of an assessment voted by the stockholders, pursuant to the Rev. Sts. *c.* 38, § 13, and also voted by the directors, against one who has had notice of the votes, and had a demand made upon him for payment of the assessment.

The fixing of the amount of the capital stock of a corporation, pursuant to the Rev. Sts *c.* 38, § 9, is not a condition precedent to the maintenance of an action by the corporation on a contract made with them.

It is no defence to an action by a corporation chartered for the purpose of building a hotel, that a large and valuable portion of the building erected by them is constructed and occupied for shops.

On a written promise to a corporation to pay a certain sum for each share set against the subscriber's name, in such instalments as the president and directors may legally require, the corporation may maintain an action for an assessment legally laid and notified, and not paid, without first selling the shares for nonpayment thereof.

ACTION OF CONTRACT to recover assessments on fifty shares of the plaintiffs' stock subscribed for by the defendant by executing the following paper :

" The Proprietors of the City Hotel in Worcester. Whereas an act entitled ' An act to incorporate the City Hotel in Worcester ' was duly approved by the Governor of the Common-

wealth of Massachusetts on the fourteenth day of May A. D. 1853, and thereby became a law, wherein and whereby said company, so incorporated under the name of the Proprietors of the City Hotel in Worcester, was duly authorized and empowered to erect and maintain a hotel in said Worcester, and hold real and personal estate not exceeding in amount one hundred thousand dollars, and to raise a capital stock by subscription not exceeding one hundred thousand dollars. Now therefore be it known to all it may concern, that we whose names are under written, in consideration of the premises and of the benefits and advantages resulting to us respectively, do hereby subscribe to the capital stock of said Proprietors of the City Hotel in Worcester, and do hereby promise and faithfully undertake, each for himself, to pay into the funds of said company, in such instalments as the president and directors may under the provisions of law require, one hundred dollars for each share set against our names respectively, and to comply in all respects with the provisions of law which regulate subscriptions to the capital stock of such companies. Signed and sealed by us respectively."

At the trial in the court of common pleas, before *Mellen,* C. J., it appeared that the plaintiffs were incorporated by *St.* 1853, *c.* 341, " by the name of the Proprietors of the City Hotel in Worcester, for the purpose of erecting a hotel or boarding-house in the City of Worcester, and maintaining the same and the buildings and appurtenances connected therewith," with a capital stock not to exceed one hundred thousand dollars, and subject to the Rev. Sts. *cc.* 38, 44; but by *St.* 1855, *c.* 417, the provision making them subject to the Rev. Sts. *c.* 38 was repealed.

The following facts were in evidence : At their first meeting, held on the 27th of June 1853, their charter was accepted, and a committee chosen to procure subscriptions to the capital stock, and prepare by-laws; but the capital stock was not fixed or limited, or divided into shares, as required by the Rev. Sts. *c.* 38, § 9.

At the annual meeting on the 3d of January 1854, the de-

fendant was chosen a director, and also clerk and treasurer; but resigned those offices on the 10th of June 1854. While he held the office of treasurer, he received, in that capacity, the instrument declared on, and, on resigning, delivered it to his successor in office. On the plaintiffs' cash book the defendant had made this entry in his own handwriting, which he had afterwards erased: "April 15. By cash of William Dickinson, a second assessment, $1000."

The plaintiffs, at a meeting held on the 1st of September 1854, voted that their capital stock should consist of one thousand shares of one hundred dollars each; on the 13th of April 1855 (doubts having been raised as to the validity of their previous proceedings) organized anew, and fixed the amount of the capital stock at one hundred thousand dollars, as before; and at a meeting held on the 8th of June 1855, voted to reduce their capital stock to eight hundred and seventy seven shares of one hundred dollars each, and to lay an assessment of $100 on each share, payable in three instalments, one of $15 on the 20th of June, one of $60 on the 10th of July, and one of $25 on the 20th of July 1855, and that the president and directors "be directed to require the payment of said several instalments at the times aforesaid, and if not promptly paid, to resort to proper legal remedies to procure the payment thereof;" and provided that subscribers should be credited with all sums previously paid in. The directors, at a meeting on the same day, passed a precisely similar vote for laying and collecting an assessment of $100, in three instalments. The defendant had notice of these votes; and payment of each assessment was duly demanded of him, and refused.

The defendant, in order to show that the plaintiffs had erected a building different from that authorized by their charter, offered testimony "that a large and valuable portion of the building erected by the plaintiffs was constructed to be occupied for stores, and had been leased by them for that purpose." But the judge rejected the evidence.

The defendants requested the court to instruct the jury that the plaintiffs could not maintain this action,

1st. Because the instrument declared upon did not set forth any contract between the defendant and the plaintiffs; there being no payee named therein.

2d. Because the president and directors had no authority to make any assessment, and therefore the defendant was not liable on any assessments made by them.

3d. Because the plaintiffs had failed to fix or limit the amount of their capital stock, as required by Rev. Sts. *c.* 38, § 9.

4th. Because the reorganization of the 13th of April 1855 was irregular, for various reasons not necessary to be here stated.

5th. Because the plaintiffs had not sold, or offered for sale, the defendant's shares, for nonpayment of assessments, before commencing this action.

But the court refused so to rule; whereupon the defendant submitted to a verdict for the plaintiffs, and alleged exceptions.

*F. H. Dewey,* for the defendant, cited, to the second point above stated, Rev. Sts. *c.* 38, § 13; *Salem Milldam* v. *Ropes,* 6 Pick. 23; and to the fifth, Rev. Sts. *c.* 38, §§ 14, 15; *New Bedford & Bridgewater Turnpike* v. *Adams,* 8 Mass. 138; *Essex Turnpike* v. *Collins,* 8 Mass. 292; *Cutler* v. *Middlesex Factory* 14 Pick. 483; *Atlantic Cotton Mills* v. *Abbott,* 9 Cush. 423.

*E. Washburn & G. F. Hoar,* for the plaintiffs.

MERRICK, J. It was admitted by the defendant at the trial, that he executed the instrument, of which a copy is annexed to the declaration; but he contends, for the various reasons which he has assigned, that no action upon it can be maintained against him.

1. He objects, in the first place, that it constitutes no contract between him and the plaintiffs, because they are not named in it as payees, or as the party in whose behalf it is to be performed. This objection, in view of the provisions of the instrument, as well as of the use which was made of it, both by those by whom it was signed, and by whom it was received, cannot be allowed to prevail. The instrument itself is without any date, and it is not shown precisely at what time it was in fact executed. It was however certainly after the enactment of the act under

which the plaintiffs are constituted a corporation. Probably it was subsequent to their legal organization; for it appears that at the first meeting held under their charter a committee was appointed to procure subscriptions to the capital stock; and the existence or circulation of any other instrument or paper, beside the one under consideration, has not been suggested. But the exact time when this was signed by the defendant is not very material. It is of more importance to consider the stipulations which are contained in it, the nature and extent of the obligations assumed by its subscribers, and the manner in which it was treated by the parties who respectively made and received, and who may therefore be presumed to have a direct interest in it.

It is to be observed, that the capital stock of the company is neither by the provisions of the charter, nor by the terms of the subscription, to consist of any fixed or stated amount. It was only not to exceed one hundred thousand dollars. This is a material consideration, and effectually distinguishes the present from the case of *Atlantic Cotton Mills* v. *Abbott*, 9 Cush. 423. In that case, by the terms of the subscription, provision was made for the formation of a company with a capital stock of not more than two, nor of less than one and a half million dollars. Upon the subsequent organization of the company, they fixed their capital at $1,350,000, and this was held to exonerate the defendant from the obligation to pay for the shares for which he had subscribed, because the effect of it was to impose upon him a larger share and proportion of the enterprise than he had agreed to assume.

But in this case there was no provision by which the contract between the parties was to be qualified, affected or controlled. The defendant undertook and promised to pay into the funds of the company, one hundred dollars for each share set against his name; and the number of shares thus set against it being fifty, his subscription was, in effect, for the sum of five thousand dollars. His promise to pay that amount was not by its terms made at all dependent upon the amount of the capital stock of the company, or of the subscriptions of other parties to the instrument. No condition of that kind was annexed to or incor-

porated in it. The subscription was to the capital stock of the Proprietors of the City Hotel in Worcester, and the engagement was to pay the amount of it into the funds of the company. This could leave no doubt, in the mind of any, as to the party to whom the money was to be paid, or with whom the contract was entered into. It was not in its origin, nor does it appear that until after the commencement of this action it was ever brought into question. There was no misconception or doubt between the parties concerning it. The instrument embodying the contract was accepted by the corporation, and has ever since been acted upon by them as a legal obligation. While the defendant was their treasurer, he took it into his official custody, and retained it as an instrument to which the plaintiffs were entitled and by which he was himself bound ; and upon his resignation, he transmitted it to his successor in office, as a document belonging to them. He had in the mean time given the plaintiffs credit in their books, in his own handwriting, for the sum of one thousand dollars, as the payment of the second instalment due upon his own subscription. These significant acts of the parties, as well as the terms of the contract, upon a fair and proper interpretation of its provisions, are decisive upon the question. It was a contract made with the plaintiffs. Both parties alike understood it to be a promise to them, and neither of them hesitated, for a long time, and until after many new obligations had been contracted, and new relations formed, to act in conformity with that understanding. After all this it was certainly too late for the defendant, without attempting to point out any other party with whom this contract either was or could have been made, to deny that his stipulations in the subscription for stock were entered into with the plaintiffs.

2. The defendant further contends, that the president and directors had no authority to lay assessments upon the capital stock of the company, or upon the proprietors of, or subscribers for, the several shares into which it was divided. And he insists that this constitutes an insuperable objection to the maintenance of the present action. Under their act of incorporation, before it was modified by the provisions of a subsequent statute, the

plaintiffs were invested with the powers and privileges, and were made subject to the duties, liabilities and restrictions set forth in the thirty-eighth and forty-fourth chapters of the revised statutes. By these statutes, the corporation, at a legal meeting of the proprietors, are authorized to impose assessments upon the whole stock of the company, as it is subdivided into shares. And the right of so doing is confined to the action of the company in its corporate capacity; the president and directors are not, by virtue of their office, invested with an equal or corresponding authority. Rev. Sts. c. 38, § 13.

But it is not upon the ground that the president and directors of the company had a legal right to lay such an assessment, that the plaintiffs claim to be entitled to maintain this action. Instead of this, they proceed wholly upon the written contract set forth in the declaration. By the terms of that contract, the defendant bound himself to pay the sum of money subscribed by him, in such instalments as the president and directors should under the provisions of law require. This was a condition to be complied with before the plaintiffs could legally insist upon the payment of the money demanded. Now it appears from the records of the corporation, that at a legal meeting held on the 8th of June 1855 assessments were duly laid upon all the shares of the capital stock, payable in instalments, on certain days and times particularly enumerated. This laid a sufficient foundation for a demand by the president and directors upon those subscribers for stock who had entered into an express engagement to take and pay for the same, in such instalments as those officers should according to the provisions of law require. And it further appears that on the same day, but subsequently to these valid proceedings of the corporation, the president and directors, obviously for the purpose of preserving the rights of both parties to the contract, and of subjecting each of them to its obligations, laid a similar assessment upon the shares of the capital stock of the company, payable in the instalments and at the times designated in the votes of the corporation. Of all these proceedings, both of the corporation and of the president and directors, the defendant was duly noti-

fied, and payment demanded of him in conformity therewith. This was a substantial compliance by the plaintiffs with the condition in the contract which was on their part to be performed. The assessment by the corporation was valid. It authorized a requisition upon the defendant, by the president and directors, for the money which he had engaged and undertaken to pay when they should require it. Whether any difficulty would have arisen, or whatever it might have been, if there had been any conflict between the votes of the corporation and the action of the president and directors in relation to the assessment or requisition for payment, none now arises, because they are perfectly consistent with each other. In each particular the proceeding was strictly according to law. It is immaterial that the president and directors denominated their action an assessment upon the shares; the substance and meaning of their language, and of their action following immediately after that of the corporation, was evidently a mere requisition upon subscribers to pay the amount of their subscriptions, in conformity with their respective promises, at the times and in the instalments thus particularly fixed and designated. As the defendant, after all these proceedings had been duly made known to him, refused to pay the money demanded, he became liable, under his express contract, to an action for the nonperformance of his promise.

3. But it is still further objected in his behalf, that the proceedings of the corporation, in laying the assessment, were nugatory; because there had been an omission to fix and limit the amount of the capital stock of the company, at the first meeting held under its charter, in conformity with the provisions of the Rev. Sts. c. 38, § 9. This provision cannot be considered as a condition precedent to the future and continued existence of the corporation, and its capacity afterwards to exercise its corporate powers, and to fulfil the purposes for which it was created. Like many other not dissimilar provisions, it is to be regarded rather as directory, than as imperative and conditional. Such directions are intended to promote order and regularity in the proceedings of the corporation; but their observance does not

seem to have been designed as an.indispensable prerequisite to the maintenance of its franchise, or the legal exercise of many of the powers with which it may have been invested. This cor poration, and all bodies corporate to which the provisions of the Rev. Sts. *cc.* 38, 44, refer, are fully empowered to enter into large and important contracts with other parties, who have no means of determining whether every direction and formality required of them, in order to their proper organization, has been duly observed. And therefore a failure to conform with such directions is never to be held to be an extinguishment or determination of the powers of the corporation. Contracts in which many persons, besides those between whom they are directly made, have a material interest, are not for such formal causes to be discarded. Whatever other effects may result from an omission to comply with such provisions; whether it be to make the corporation directly amenable to the government in any process, charging it with a neglect of the positive provisions of law, or to revise and correct its proceedings under the order and sanction of judicial tribunals, or otherwise ; it cannot be held to be a disfranchisement of the corporation, or allowed to impair the validity of contracts which, but for this cause, it had authority to enter into, and against which no other objection can be urged. *Stebbins* v. *Merritt,* 10 Cush. 27.

The assessment therefore which was laid upon the shares by the corporation, at its meeting on the 8th of June, was a legal proceeding, and authorized the president and directors of the company, under the provisions of law, to call upon the defendant for the payment of the amount of his subscription.

4. The evidence which was offered by the defendant, to prove that a large and valuable portion of the building erected by the plaintiffs was constructed to be occupied for stores, and had been leased by them for that purpose, was rightly rejected. Whether an appropriation of certain parts of the building might not properly, according to the usual modes of constructing buildings for hotel purposes, be made for stores, need not now be considered. If, in this particular, the corporation has violated the provisions of its charter, has exceeded its powers,

or assumed those it is not warranted to exercise, it is undoubt-edly answerable to the government; and if upon a proper pro-cess, duly prosecuted, this fact should be established, the law will apply a suitable remedy. But this objection cannot be taken advantage of by an individual proprietor, as a defence to a suit brought for the recovery of money which he has expressly promised to pay.

5. The plaintiffs are not limited and confined, as the defend-ant contends, merely to the statute remedy, which authorizes a sale of shares for the nonpayment of assessments, and a resort to the owners for any deficiency which may be found to exist, after first appropriating to their payment the proceeds of the sale. This is undoubtedly the general and well settled rule in relation to stockholders who have merely subscribed for and engaged to take shares in a corporation; but it is equally well established that, when they have entered into explicit stipula-tions, and have made special promises to pay any designated sum of money, they are liable to an action for its recovery. *Atlantic Cotton Mills* v. *Abbott*, 9 Cush. 423. It is upon this latter ground that the plaintiffs seek, and upon which it must be determined that they have a right to recover.

As the corporation was duly organized at its first meeting, and its powers were not invalidated by an omission to fix and limit, according to the directions of the statute, the amount of its capital stock, the meeting called on the 8th of June 1855, in conformity to the by-laws, was legally assembled; and there-fore it is unnecessary to consider what was the effect of the attempt to reorganize the corporation.

The refusal therefore of the court below to rule in the several particulars requested by the defendant was correct, and his ex-ceptions must accordingly be overruled.